## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

MARVETTE JOHNSON and DEBBIE )
JOHNSON, )
            )
     Plaintiffs, )
            )
v. )          Civil Action No. 12-00534-N
            )
STATE FARM FIRE & CASUALTY )
COMPANY, )
            )
     Defendant. )

## MEMORANDUM OPINION AND ORDER

Before the Court[1] is the motion for summary judgment (Doc. 43), filed June 14, 2013 by Defendant State Farm Fire and Casualty Company ("State Farm"), along with State Farm's brief and other materials in support of and/or related to the motion (Docs. 44-51). The plaintiffs, Marvette Johnson and Debbie Johnson, have responded (*see* Doc. 55), State Farm has filed a reply in support of its motion (*see* Doc. 61), and, for the reasons explained herein, State Farm's motion for summary judgment is **GRANTED** in its entirety. The Johnsons' claims are **DISMISSED** with **PREJUDICE**, and the Clerk is **DIRECTED** to **CLOSE** this case.

## I.      Procedural Background.

On December 8, 2011, the Johnsons filed their complaint, asserting two claims (breach of contract and bad faith), against their insurer, State Farm, in the

---

[1] This matter is before the undersigned United States Magistrate Judge to conduct any and all proceedings, including trial, entry of final judgment, and all post-judgment proceedings pursuant to 28 U.S.C. § 636(c). (*See* Docs. 8, written consent of the parties; 9, order of reference.)

Circuit Court of Mobile County, Alabama (Doc. 1-1). An amended complaint (Doc. 1-2), making changes to only the *ad damnum* clause, was filed December 12, 2011. After discovery in the state action made it clear to State Farm that the Johnsons were seeking damages in excess of the federal jurisdictional minimum, $75,000, State Farm timely removed this case to federal court on August 23, 2012.[2] (*See generally* Doc. 1.) No motion to remand was filed, and, on November 20, 2012, the Court entered the Rule 16(b) scheduling order (Doc. 14).

The scheduling order required the Johnsons to, among other things, make their disclosure of expert testimony as required by Rule 26(a)(2)[3] on or before March 15, 2013. (Doc. 14, ¶ 6.) While State Farm's Rule 26(a)(2) disclosure, made April 19, 2013 (*see* Doc. 32), was timely (*see* Doc. 14, ¶ 6), the Johnsons' disclosure (Doc. 35), made May 2, 2013, was not. Consequently, the Court granted State Farm's unopposed motion to strike the Johnsons' expert disclosure. (*See* Docs. 38, 39, 42.)

After State Farm moved for summary judgment, on June 17, 2013, the Court issued an order (Doc. 53), setting July 11, 2013 as the deadline for the Johnsons to

---

[2] "If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, ***or in responses to discovery***, shall be treated as an '***other paper***' under subsection (b)(3)[,]" which provides that "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of . . . ***other paper*** from which it may first be ascertained that the case is one which is or has become removable . . . ." 28 U.S.C. § 1446(c)(3)(A), (b)(3) (emphases added); *see, e.g., Randall v. Target Corp.*, No. 13–61196–CIV, 2013 WL 3448116, at *2 (S.D. Fla. July 9, 2013).

[3] That rule provides, generally, that, "[i]n addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." FED. R. CIV. P. 26(a)(2)(A).

respond to the motion and July 25, 2013 as the deadline for State Farm to file its reply.

On July 11, 2013, the Johnsons filed their response (Doc. 55), a pleading titled "proposed findings of fact and conclusions of law" (Doc. 56),[4] and a "request for leave to file additional pages" (Doc. 57). On July 17, 2013, on the basis that the Johnsons had "filed no motion for summary judgment in this case[,]" the Court struck the "proposed findings" and denied the "request to file additional pages." (Doc. 59.)

On July 20, 2013, the Johnsons filed a "motion for leave to re-file excerpts of stricken document as statement of disputed facts" (Doc. 60), in which they acknowledged that they did not move for summary judgment, but advised the Court that their "proposed findings" were based on Rule 56(f)(1), "which provides that the Court has discretion to enter summary judgment in favor of a nonmovant after giving notice and a reasonable time to respond, if required by the record evidence, and no disrespect for the Court or evasion of the deadline for filing Motions for Summary Judgment was intended" (*id.*, ¶ 2).[5] On July 22, 2013, the Court denied

---

[4] The "proposed findings" actually appear to be a proposed order on summary judgment (*see, e.g., id.* at 1 ("The Court enters the following decision and order following consideration of the motion for summary judgment (Doc. 43) filed by State Farm Insurance . . . .")), which invokes Rule 56(f)(1).

[5] That section of the summary judgment rule merely codifies the longstanding power of a court to enter summary judgment *sua sponte* so long as "the party against whom judgment [is to be] entered had proper notice of the possible judgment against him[,]" *California v. Kinder Morgan Energy Partners, L.P.*, No. 07–CV–1883–MMA(WVG), 2013 WL 314825, at *22 (S.D. Cal. Jan. 25, 2013) (citations omitted); as such, Rule 56(f)(1) is a tool to be used by the Court, and **is not a substitute for filing a motion for, or cross-motion to, summary judgment** (*see* Doc. 61 at 4-5 (collecting cases)).

their motion (*see* Doc. 61), noting that "[i]f, after a review of the evidence and arguments in support of, and in opposition to, summary judgment, the Court believes the plaintiffs may be entitled to summary judgment, it will issue an order advising the parties of its intent to utilize Rule 56(f)(1) and set an appropriate briefing schedule" (*id.* at 6).[6]

Also before the Court are two motions to strike—one filed by the Johnsons (Doc. 58), concerning an expert report submitted by State Farm, to which State Farm has responded (*see* Doc. 66), and one filed by State Farm itself (Doc. 64), concerning evidence the Johnsons proffer in opposition to the summary judgment motion. As the Court previously noted (*see* Doc. 65), at summary judgment, "[i]t is the function of a court, with or without a motion to strike, . . . to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement," *Rangel v. Schmidt*, Cause No. 2:09–CV–071, 2011 WL 5570691, at *4 (N.D. Ind. Nov. 16, 2011); therefore, the Court will consider the motions to strike "on an ongoing basis herein, and only to the extent necessary to resolve the pending Motion for Summary Judgment[,]" *King v. Alabama Dep't of Pub. Health*, Civil Action No. 09–0503–WS–C, 2010 WL 3522381, at *1 n.1 (S.D. Ala. Sept. 2, 2010).

## II.    Pertinent Factual Background.

The parties' submissions establish the following facts, construed in a light

---

[6]    Because the Court has determined that the Johnsons are not entitled to summary judgment in their favor, no such order was necessary.

most favorable to the Johnsons.[7]

A.    The Policy.

State Farm insured the Johnsons' house located at 7651 Patruski Road, Coden, Alabama under homeowner's policy no. 01-13-5853-0 (Doc. 46-1 at 1-38) (the "Policy"), which was effective from June 28, 2010 through June 28, 2011 (*see id.* at 2). The Policy contains certain limitations and exclusions applicable to the Johnsons' insurance claim and, ultimately, this litigation. The key exclusion language appears in Paragraph 2 of "SECTION I – LOSSES NOT INSURED" of the Policy, which begins as set out below:

> We do not insure under any coverage[8] for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these[, including]:
>
> c.    Water Damage, meaning:

---

[7]    The facts as stated herein are necessarily limited by the Court's task at hand. At summary judgment, "[t]he Court will not weigh the evidence or make findings of fact"; its "role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party." *MSC Mediterranean Shipping Co. SA, Geneva v. Metal Worldwide, Inc.*, 884 F. Supp. 2d 1269, 1273 (S.D. Fla. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003)); *see also Cassady v. Walker*, No. CV 109–128, 2012 WL 899913, at *12 n.12 (S.D. Ga. Feb. 6, 2012) ("Of course, the Court's finding . . . is limited to the present summary judgment stage of these proceedings, in which the facts are viewed in the light most favorable to Plaintiff. This finding should not be construed as any ruling or commentary on whether Plaintiff will ultimately prevail on his [ ] claims."), *report & recommendation adopted*, 2012 WL 899200 (S.D. Ga. Mar 15, 2012).

[8]    The Policy provides for multiple coverages (*i.e.,* dwelling; personal property; loss of use). (*See id.* at 16-20.)

(1)    flood, surface water, waves, tidal waves, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2)    water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system, designed to remove subsurface water which is drained from the foundation area; or

(3)    water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, providing the resulting loss is itself a Loss Insured.

(*Id.* at 23 (emphasis removed).)

The Policy also includes an endorsement excluding fungus (including mold).

(*See id.* at 7.)    Among other things, that endorsement adds a subparagraph to Paragraph 2, above:

g.    Fungus.  We also do not cover:

(1)    any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated costs or expense, due to interference at the residence premises or location of the rebuilding, repair or replacement, by fungus;

(2)    any remediation of fungus, including the cost to:

(a)    remove the fungus from  covered property or to repair, restore or replace that property; or

(b)    tear out and replace any part of the building or other property as needed to gain access to the fungus; or

(3)    the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of fungus, whether performed prior to, during or after removal repair, restoration or replacement of covered property.

All other policy provisions apply.

(*Id.* (emphasis removed).)

**B.    The Johnsons' Claim and State Farm's Response.**

In late 2010, the Johnsons began remodeling their house. (*See* Doc. 46-1, D. Johnson Dep. excerpts at 44 (4:14).) In the course remodeling, the Johnsons removed the flooring in their living room and discovered mold in the crawl space below the house. (*See* Doc. 46-1, M. Johnson Dep. excerpts at 88-97 (14:13-18; 18:8-26:3).) Sometime after the mold was discovered, the Johnsons discovered a pinhole leak in a plumbing pipe under their kitchen floor.[9] (*Id.* at 98-100 (28:19-30:20).) Mr. Johnson testified that it was uncertain how long the leak existed prior to its discovery and that the leaking pipe sprayed a mist up toward the floor "[r]ight in the middle of the kitchen." (*Id.*) On February 21, 2011, the Johnsons filed a claim with State Farm regarding the mold; Claim Representative Tony Bartlett was assigned their claim, and he scheduled an inspection of the Johnsons' house for February 25, 2011. (*See* Doc. 47 at 2, Bartlett Decl., ¶¶ 5, 6.) Following his inspection on February 25, 2011, Bartlett wrote the Johnsons on March 2, 2011,

> . . . During my inspection of your interior, I observed the wood flooring had buckled and severe mold and mildew on the living room subfloor framing. You had stated that to the best of your knowledge there were no water leaks related to the mechanicals in your house. You also

---

[9]    Mr. Johnson testified that the leak was discovered after he went to the doctor after being exposed to the mold. (*See id.* at 99 (29:9-14).)

stated that you had recently installed a concrete carport and sidewalk pads. The wall paneling in several rooms also had warping and bulging from moisture. You stated that several days ago when you began tearing out the floor for remodeling work you then noticed the mold and wetness under the house.

My inspection of the exterior and the foundation space of your house revealed events taking place. There is partial plastic vapor barrier, which is in poor condition, on the ground under the house and the venting of the foundation walls is inadequate. The new concrete sidewalk along the front and the carport slab were poured high against the brick and the foundation vents decreasing the amount of vent space. There was also evidence that there is water leaking under the house through the vents from the newly poured concrete. It appears that surface water moisture is accumulating in your yard and leaking under your house, creating brown fungus on the subfloor structure. There is also evidence of rotten wood framing to the subfloor and to the gall door casing and subfloor.

In summary, it is my opinion that your yard has difficulty with the drainage of surface water and the runoff from your roof. Due to the lack of ventilation and the lack of a vapor barrier under the foundation space, and the water runoff from the newly installed concrete sidewalk and carport, there is a buildup of moisture which causes growth of the fungus, mold, rot, and buckling of the hardwood flooring to the interior. Unfortunately, these are non-covered events in our policy. Therefore, we will be unable to assist you with this claim. . . .

(Doc. 47 at 21.)

On August 5, 2011, Attorney Warhurst wrote Bartlett to inform State Farm that he represented Mrs. Johnson "in her property damage claim of 2/19/2011." (Doc. 48 at 22.) Warhurst wrote Bartlett again on September 23, 2011, to inform Bartlett that "[t]he cause of loss is a burst water pipe" and to name Samantha Green as his clients' appraiser. (*Id.* at 24.) In October 2011, Green instructed Bartlett to re-inspect the Johnsons' house, and he scheduled a second inspection on October 20, 2011. (Doc. 47 at 4, Bartlett Decl., ¶ 12.) Following this inspection,

Bartlett wrote to Warhurst on October 25, 2011,

> . . . Our investigation revealed evidence of continuous seepage and leakage of water and moisture from a water source outside the house plumbing system. There was also evidence of extreme growth of mold and mildew throughout the interior of the house which has been unattended and vacant. The plumber stated that he did not have the pipe which was stated as being repaired after our original investigation and was not available for our inspection and documentation. Our inspection revealed additional water leakage from a roof leak in several rooms which have water damage to the ceilings and paneling which was paid for under a separate claim.
>
> In summary, our investigation revealed no coverage changes from our original inspection and these are non-covered events in our insured's policy. Therefore, we will be unable to assist you with this claim. . . .

(Doc. 47 at 13.)

Samantha Green also inspected the Johnsons' house. (*See generally* Doc. 48, Green Dep. excerpts, at 38-50.) Green testified that she found no evidence of a plumbing leak and that she observed water lines/discoloration on cinder blocks supporting the house, which she indicated was evidence of pooling water. (*See id.*) She further testified that Mr. Johnson confirmed to her that water pooled under the house after rainstorms and that, based on her inspection and conversation with Mr. Johnson, she told Warhurst she would not serve as the plaintiffs' appraiser on this case. (*See id.*)

Joel P. Wehrman, P.E.—who the Johnsons stipulate qualifies as an expert witness in this case[10]—also inspected the Johnsons' property (the house was not

---

[10] Although the plaintiffs' counsel made this stipulation on the record at Wehrman's deposition, they have filed a motion to strike (Doc. 58) his expert report, which the Court addresses at some length below, but, consistent with counsel's stipulation, they have chosen not to challenge Wehrman's testimony on *Daubert* grounds. (*Cf.* Doc. 14-1, ¶ 4(F) (providing that August 22, 2013 was the deadline to challenge expert witnesses).)

standing at the time Wehrman became involved) at the request of State Farm on April 18, 2013. (*See* Doc. 48, Wehrman Dep. excerpts, at 73 (31:8-15).) While he was not able to inspect the actual house, Wehrman's opinion (as set out in his report (*see generally* Doc. 49 at 1-83)) is based on a review of photographs from Bartlett's two prior inspections, the State Farm claim file, and depositions taken in this litigation, and independent research regarding applicable soil conditions. (*See* Doc. 48 at 69-74 (21:17-24:17; 31:16-23).) Wehrman testified that it was his opinion that the damage to the Johnsons' house was caused by excessive moisture and humidity in the crawl space, and he observed that the conditions indicated a long-term moisture problem, created by ground surface water runoff and ground-based moisture, which took the form of vapor. (*See id.* at 75-77 (36:3-38:22); *see also* Doc. 49 at 1-83.) He further opined that the installation of the sidewalk and concrete slab worsened the problems by (1) increasing the likelihood that runoff water would enter the crawl space and (2) reducing the ventilation to the crawl space. (*See id.*) He also concluded that the damage was not caused by a plumbing leak. (*See id.*)

### III.  Wehrman's Expert Report May Be Considered At Summary Judgment.

As an initial matter, because State Farm is the only party to offer expert testimony (to show that the damage to the Johnsons' home was caused by a means excluded by the Policy), the Court must first address the admissibility of that expert's report. The Johnsons, in their motion to strike (Doc. 58), contend that the Court cannot rely on the expert report proffered by Wehrman, which they contend is hearsay, because Wehrman is not "present in court to testify . . . and to be cross-

examined on the substance" of his report. (*Id.* (citing *Forward Communications Corp. v. United States*, 608 F.2d 485 (Ct. Cl. 1979); *Tokio Marine & Fire Ins. Co., Ltd. v. Norfolk & W. Ry. Co.*, 172 F.3d 44, 1999 WL 12931 (4th Cir. Jan. 14, 1999).)

Both cases the Johnsons cite involve consideration of "expert" reports from witnesses not present **at trial**. *See, e.g., Tokio Marine*, 1999 WL 12931, at *3 ("Even if Clark were qualified as an expert, the report was inadmissible hearsay. Reports stating an expert opinion 'are not admissible without the preparer being present in court to testify as to his qualifications as an expert and to be cross-examined on the substance.'" (quoting *Forward Communications*, 608 F.2d at 511)). In *Forward Communications*, the court discussed at length the admissibility of an appraisal report[11] as a business record under Federal Rule of Evidence 803(6),[12] *see* 608 F.2d at 509-11, and, after examining the proper meaning of the word "opinion"

---

[11]     At issue was Forward's valuation, which was "claimed to be supported by the report of an appraisal of the newspaper's tangible assets performed for the newspaper by the Industrial Appraisal Company, Pittsburgh, Pennsylvania, on March 1, 1968, for fire insurance purposes, and by the testimony of an expert witness[.]" *Id.* at 509. The problem with the appraisal report was that Forward "did not offer any witness from the Industrial Appraisal Company to support its report, nor did it account for the absence of such a witness; rather, [its] vice president for finance[] produced and identified the report for admission into evidence." *Id.* at 510.

[12]     While Rule 802 generally prohibits hearsay, Rule 803 spells out exceptions to that rule, one being "[a] record of an act, event, condition, **opinion**, or diagnosis if [certain conditions have been met]." FED. R. EVID. 803(6) (emphasis added). Importantly, however, even if a record is not hearsay, "[n]othing in Rule 803 says that [it] may not be excluded by some other rule[,]" including Fed. R. Civ. P. 701, 702, and 705. *Forward Communications*, 608 F.2d at 510; *see, e.g., Gordon v. Wal-Mart Supercenter*, Civil Action No. 08–00527–CG, 2009 WL 3850288, at *8 (S.D. Ala. Nov. 12, 2009) ("[T]he plaintiff's medical records are relevant and admissible as an exception to the hearsay rule under Federal Rule of Evidence 803(6) and 803(4). However, since this court has established above that the treating physicians are not allowed to testify as experts, any statements in the medical records unrelated to the treatment of plaintiff, including any statements as to the causation of plaintiff's injuries, is not admissible under Rule 803(4)." (citation omitted)).

in Rule 803(6), concluded

> the opinions referred to in Rule 803(6) are those which are incident to or part of factual reports of contemporaneous events or transactions. On the other hand, reports which are prepared to state or to support expert opinions are not admissible without the preparer being present in court to testify as to his qualifications as an expert and to be cross-examined on the substance, pursuant to Rules 702 and 705.

*Id.* at 511. Similarly, in *Tokio Marine*, the Fourth Circuit, reversed the district court's decision to rely on a report from an expert absent at trial: "Since the report presents the opinion of someone who did not testify at trial, and it was offered as evidence of the appraisal value of the damaged cars, it was hearsay." 1999 WL 12931, at *3. The appeals court "also disagree[d] with the district court's alternative theory for admitting it under the business records exception to the hearsay rule." *Id.*

Here, the Johnsons were given free reign to test Wehrman's "qualifications as an expert and [ ] cross-examine[ Wehrman] on the substance" of his report during his deposition on May 16, 2013. *Forward Communications*, 608 F.2d at 511; *Tokio Marine*, 1999 WL 12931, at *3. Accordingly, any argument that Wehrman's report should not be considered now, on summary judgment, because the Johnsons do not have an opportunity to ***re-cross-examine*** Wehrman is misplaced. As the Johnsons were given the opportunity to depose, and did depose, Wehrman, the problems associated with hearsay evidence are simply not present. *Compare Farrish v. Mississippi State Parole Bd.*, 836 F.2d 969, 798 (5th Cir. 1988) (Hearsay evidence "presents a two-fold problem: it prevents [a party] from confronting and cross-examining the declarant, and unreliable hearsay undermines the accuracy of the

fact-finding process.") *and United States v. Evans*, 216 F.3d 80, 85 (D.C. Cir. 2000) ("The problem with hearsay is that it deprives the defendant of the opportunity to cross-examine the person who uttered the statement at issue."), *with Barradas v. Holder*, 582 F.3d 754, 762 (7th Cir. 2009) ("We have observed that 'problems of fundamental fairness associated with hearsay testimony are dispelled when the testimony is subject to cross-examination[.]'" (quoting *Olowo v. Ashcroft*, 368 F.3d 692, 700 (7th Cir. 2004))).

Moreover, at summary judgment, while "[t]he general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment[,]" *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)), "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form[,]" *id.* at 1293-94 (quoting *Macuba*, 193 F.3d at 1323); *see also Hosea v. Langley*, No. Civ.A. 04-0605-WS-C, 2006 WL 314454, at *8 (S.D. Ala. Feb. 8, 2006) ("[T]he law is clear that 'inadmissible hearsay may sometimes be considered by a court when ruling on a summary judgment motion,' provided that such hearsay is reducible to admissible form at trial." (quoting *Pritchard v. Southern Co. Svcs.*, 92 F.3d 1130, 1135 (11th Cir. 1996))).

As observed by the court in *Marceau v. International Brotherhood of Electrical Workers*, 618 F. Supp. 2d 1127 (D. Ariz. 2009), "[a]t the summary judgment stage, [courts] do not focus on the admissibility of the evidence's form. We

instead focus on the admissibility of its contents." *Id.* at 1142 (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003)).  The defendants there, similar to the Johnsons here, argued that an expert report from Bradley Preber was "inadmissible evidence" at summary judgment. *See id.* at 1143.  But the court disagreed:

> to the extent that the Preber Report constitutes hearsay, it would appear that Preber could testify to all the relevant portions of his report from personal knowledge, FED. R. EVID. 602, or at the very least use the report to refresh his recollection, FED. R. EVID. 612.  In addition, to the extent that Defendants contend that Preber's testimony and the contents of his Report is based on inadmissible hearsay, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference . . . need not be admissible in evidence." FED. R. EVID.703.

*Id.*; *accord Jones*, 683 F.3d at 1294 ("The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." (citing *Pritchard*, 92 F.3d at 1135)).

Therefore, because, *one* (as stated above), the Johnsons already have had the opportunity to "cross-examine" Wehrman as to his report and, *two*, to the extent his report constitutes hearsay, Wehrman could testify to (and has already been deposed regarding) all relevant portions of his report from personal knowledge or, alternatively, use that report to refresh his recollection, the Court can rely fully on the substance of Wehrman's expert report in ruling on the pending motion for summary judgment.  *Cf. Lowery v. General Motors Corp.*, No. 07-0410, 2007 WL 4374291, at *1 (W.D. La. Dec. 14, 2007) ("An expert report, ***unaccompanied by*** any affidavit or ***deposition testimony***, is nothing more than hearsay and is not

competent summary judgment evidence." (emphasis added)).  Accordingly, the Johnsons' motion to strike (Doc. 58) is **DENIED**.

## IV.    Summary Judgment and Breach of Contract.

Although bad faith claims have been asserted, those claims rise or fall on the breach of contract claim, which, at summary judgment, turns on whether State Farm has carried its burden to prove that the Johnsons' loss is excluded under the Policy and, *if so*, whether the Johnsons have carried their burden to show that their loss is covered under the Policy.  As this overview of the parties' burdens at summary judgment shows, Alabama's law with regard to insurance augments the familiar Rule 56 analysis.  Accordingly, the summary judgment and breach of contract standards and analyses are discussed in tandem below.

### A.    Standard.

It is well-established that, consistent with Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party

15

has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).[13] On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

*Archie v. Home-Towne Suites, LLC*, 749 F. Supp. 2d 1308, 1312 (M.D. Ala. 2010) (some internal citations modified and footnote added).

"A contract of insurance, like other contracts, is governed by the general rules of contracts." *Ware v. Nationwide Ins. Co.*, No. 7:11–cv–4272–LSC, 2013 WL 1680514, at *5 (N.D. Ala. Apr. 12, 2013) (quoting *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001)). "The material elements necessary to establish a cause of action for breach of contract under Alabama law are: '(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's non performance; and (4) resulting damages.'" *Id.* (quoting *Reynolds Metal Co. v. Hill*, 825 So. 2d 100, 105-06 (Ala. 2002) (citing, in turn, *State*

---

[13]     Further, "[a] factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Ware v. Nationwide Ins. Co.*, No. 7:11–cv–4272–LSC, 2013 WL 1680514, at *3 (N.D. Ala. Apr. 12, 2013) (quoting *Information Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting, in turn, *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991))).

*Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999))).

Under Alabama law, "the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, while the insurer bears the burden of proving the applicability of any policy exclusion." *Id.* (citations omitted).[14] "[N]umerous [ ] cases in Alabama illustrate this dichotomy in Alabama law, both in declaratory judgment actions by insurers and coverage actions by insureds." *American Safety Indem. Co. v. T.H. Taylor, Inc.*, 513 Fed. App'x 807, 813 (11th Cir. Mar. 14, 2013) (citations omitted). There, the Eleventh Circuit cautioned litigants not to overlook

> the difference between cases involving coverage issues—whether a claim is covered by the insuring clauses of an insurance policy—and cases involving either exclusion issues—whether a claim that might otherwise be covered is expressly excluded, or that coverage is defeated by other defenses such as policy lapses or failure of the insured to cooperate in the investigation of the claim. If the question involves coverage as in [*American Safety*] where the policy cover[ed] "an accident," the burden is on the insured to prove coverage—to prove an accident. If the question involves the application of an exclusion or an assertion that the policy does not apply for some reason other than the

---

[14]    *Compare, e.g., Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967) (in which a beneficiary brought suit for coverage on a life insurance policy and the Supreme Court explained, "The burden was on the plaintiff to prove that the insured's death resulted from injuries sustained in such a manner as to bring him within the coverage of the policy.")), *with State Farm Fire & Cas. Co. v. Shady Grove Baptist Church*, 838 So. 2d 1039, 1043-44 (Ala. 2002) (coverage action by insured in which the Supreme Court reversed the trial court's judgment in favor of insured and denial of insurer's motions for judgment as a matter of law after explaining, "in resisting State Farm's motions for a judgment as a matter of law, and for the trial court's denial of those motions to have been proper, the Church must have submitted substantial evidence showing that the collapse fit[] within the definition of that term in the policy and that it was covered under the policy by virtue of its being caused by at least one of the six enumerated causes provided in the policy.").

scope of coverage, [as is the case here,[15]] the burden is on the carrier.

*Id.* Importantly, however,

> the insurer's burden to prove the applicability of an exclusion does not "shift[ ] the general burden of proof from plaintiff to defendant." Rather, "when the defendant has offered evidence showing prima facie that the case is one of specified nonliability, the burden of showing a case within the operation of the policy remains upon the plaintiff."

*Ware*, 2013 WL 1680514, at *5 (quoting *Belt Auto. Indem. Ass'n v. Ensley Transfer & Supply Co.*, 99 So. 787, 790 (Ala. 1924)).  In this regard, when an insured is defending against an insurer's motion for summary judgment—in which the insurer argues "the application of an exclusion or an assertion that the policy does not apply for some reason other than the scope of coverage," *American Safety*, 513 Fed. App'x at 813—as is the case with this motion, "allocation of the burden of persuasion [is] compounded against [the insured]."  *Id.* at 814.  That is,

> while it is correct under Rule 56 of the Federal Rules of Civil Procedure that the [Johnsons are] entitled to all favorable inferences to be drawn from the evidence in determining whether a genuine issue of fact exists, once [State Farm] has demonstrated that the facts of record warrant judgment in its favor, the [Johnsons, who] hav[e] the burden of proof at trial[,] must come forward with evidence and argument to sustain that burden.

*Id.* (citations omitted); *compare id., with, e.g., Ware*, 2013 WL 1680514, at *5 (once State Farm offers "evidence showing prima facie that the case is one of specified nonliability, the burden of showing <u>a case within the operation of the policy</u>

---

[15]     *See, e.g.,* Doc. 44 at 16 ("State Farm Did Not Breach the Contract Because the Plaintiffs' Claim is **Excluded** by the Policy"); *id.* at 18 (Plaintiffs' loss was caused by surface water and is ***excluded*** by the Policy."); *id.* ("The Policy ***excludes*** from coverage any loss caused by water damage regardless of the cause or whether its occurs suddenly or gradually.") (emphases added).

*remains* upon [the Johnsons,]" who, thus, must come forward with evidence to show their loss is covered by the Policy (emphasis added)).

**B.      Analysis.**

      **1.      State Farm has met its burden to prove the applicability of an exclusion in the Policy.**

As set forth above, State Farm contends it is entitled to summary judgment on the breach of contract claim because it has come forward with sufficient evidence to establish there is no genuine issue of fact that the cause of damage to the Johnsons' house is excluded under the Policy.  (*See* Doc. 44 at 18 (according to State Farm, "[i]t is clear from the substantial evidence presented that the damages to [the Johnsons'] house were caused by surface water runoff, which is excluded under the Policy under the exclusion for losses caused by water damage.").)   State Farm's substantial evidence, set out above, includes the testimony of its claim representative (who twice inspected the house); the testimony of an adjuster originally hired by the Johnsons' counsel (who also inspected the house); and the testimony of, and report prepared by, an independent expert.   Based on a review of this evidence and the Johnsons' response to it, it is the opinion of the Court that State Farm has carried its burden to prove the applicability of the Policy's exclusion for water damage not caused by the residence's plumbing system (Doc. 46-1 at 22-23).  *See, e.g., American Safety*, 513 Fed. App'x at 813; *Ware*, 2013 WL 1680514, at *5.  Having determined that State Farm's evidence shows "prima facie that the case is one of specified nonliability, the burden [is now on the Johnsons to] show[] a case within the operation of the [P]olicy[.]"  *Ware*, 2013 WL 1680514, at *5.

## 2. The Johnsons have failed to come forward with admissible (or relevant) evidence to show that the damage to their house is covered by the Policy.

Aside from their effort to strike Wehrman's expert report, the Johnsons do not necessarily challenge State Farm's evidence that the damage to their house was caused by surface water runoff. They instead oppose summary judgment by "submitting evidence that the damage, at least in part, was from moisture resulting from the broken pipe" and "also point to covered damage due to a leak in the roof." (Doc. 55 at 1; *see also id.* at 2 ("While there *may* be some overlap between damage due to the broken pipe[] and damage[] allegedly due to long term water accumulation from other sources, and Plaintiffs do not concede that State Farm has proven long term accumulation as the cause, ***there is a substantial question of fact and triable issue as to the extent of damages resulting from the leakage from a hole in the pipe*** which was accidental, and discovered and repaired quickly by the insured, which is a covered claim.") (second emphasis added).)

The following is evidence that the Johnsons contend shows that "the damage, at least in part, was from . . . the broken pipe":

- Excerpts from Bartlett's deposition testimony (Doc. 55-7 at 9 (86:1-17)). Bartlett described damage shown in photographs: "We've got severe mold and mildew on the floor joists. . . . We've got severe wetness and mold and mildew on the sills. . . . The ground is heavily wet with moisture, and then there's water stains on the block pier." When pressed by the Johnsons' counsel regarding the location of the described damage—"And that's in the area right where the pipe comes across the corner of that room?"—Bartlett responded, "this area -- this area here referenced in Photo 227 is just inside the living room outside of the kitchen doorway -- which is the general area of where the pipe runs."

- Excerpts from Plumber Matt Johnson's deposition testimony (Doc. 55-2 at 1-3 (9:22-10:6; 23:5-17)). Johnson described the leak in the pipe, stating it "[s]eems like it was a small spray, maybe a pinhole . . . in a fitting, something like that[,]" and testified that the area under the "whole house" was not wet. "It was just right under the water leak."

- Excerpts from David Degeer's deposition testimony (Doc. 55-6 at 1-3 (19:2-13; 29:16-19)). Degeer testified that he observed "a little leak kinda spraying up, kinda upwards" while working in the house's living room—"I just told you I seen something spraying. Wasn't a whole lot but it was just some -- like a spraying up, kind upwards, on the floor and sides or whatever."

The Johnsons contend that the isolated (or localized) wetness, as particularly observed by Plumber Johnson, can be attributed to leaking from a broken pipe and refutes State Farm's evidence "that the damages arose from long term accumulation of water under the house." (Doc. 55; *see also id.* ("The fact that the entire area underneath the house was not wet disputes the bare claim that the slope of property caused routine accumulation of water.").) They further attack any assertion that the sidewalk or a lack of gutters contributed to the long-term accumulation of water. (*See* Doc. 55 at 6-7.)

As explained above, the Johnsons' untimely attempt to designate expert testimony failed. (*See* Docs. 35, 38, 39, 42.) Thus, while the Johnsons attempt to now use lay opinions to refute State Farm's theory that the damage at issue was caused by the long-term accumulation of ground water, only State Farm has offered expert evidence as to the cause of damage. As shown in a recent (unpublished, yet instructive) Eleventh Circuit decision, this is significant. In fact, *Nix v. State Farm Fire & Casualty Co., Inc.*, 444 Fed. App'x 388 (11th Cir. Oct. 20, 2011) (per curiam) and two Alabama district court decisions relying on *Nix* are remarkably similar to

the controversy now before this Court.  Taking *Nix* first,

> the Nixes filed a claim after a portion of a retaining wall in their home collapsed and their basement flooded.  State Farm denied coverage on the ground that the policy excluded coverage for collapses caused by defects in construction and for damage caused by groundwater.  The Nixes filed a complaint in an Alabama court that State Farm breached its contract and acted in bad faith for failing to investigate or to pay their insurance claim, and State Farm removed the action to the district court.  The district court ruled that the Nixes failed to contradict the expert testimony introduced by State Farm that the damage was attributable to defects in the construction of the house[, and the Eleventh Circuit affirmed.]

*Id.* at 389.

In *Nix*, State Farm introduced expert testimony to show that the retaining wall "collapsed because it was not properly designed or built and collapsed from hydrostatic pressure."  *Id.* at 390; *see also id.* (the insurer's expert further opined "that the retaining wall lacked reinforcing steel, as required by a local building code, and could not withstand the pressure created by groundwater that had accumulated during a heavy rainfall[, and] that a french drain installed alongside the retaining wall failed to disperse the groundwater because the drain had been covered with clay soil instead of gravel").  The Nixes failed to offer their own expert testimony.  They instead "argued that the main line water pipe burst and caused the retaining wall to collapse"—an argument "they based . . . on the opinions of Terry Nix and a contractor who made temporary repairs to the wall[.]"  *Id.*  But the district court ruled, and the Eleventh Circuit agreed, that "those opinions were not admissible as lay testimony.  Neither Nix nor the contractor witnessed the wall collapse or had personal knowledge about the construction of the Nixes' home."  *Id.*

(citing FED. R. EVID. 701 and concluding, "Because the collapse of the retaining wall was attributable to causes excluded from coverage under the Nixes' insurance policy, State Farm did not breach its contract with or owe a duty to further investigate or to pay the claim filed by the Nixes.").

In *Ware v. National Insurance Co.*, the court determined that the insurer had "offered sufficient evidence of nonliability pursuant to the Policy's water damage exclusion" (two inspections by its claims adjuster, the second conducted with a roofing expert, and an inspection by an independent engineering company). 2013 WL 1680514, at *5. While all three inspections "were consistent in finding that the water damage to Plaintiff's home arose from ground water accumulation not covered under the Policy[,]" the plaintiffs asserted that they had "put forth enough evidence to avoid summary judgment and to create a jury question regarding whether the damage [was] excluded under the Policy" by offering testimony from William Petty, "who originally installed the roof[,] allegedly inspected it after the storms in 2009[,]" and opined "that that the water damage was caused by leakage from the allegedly stormdamaged roof." *Id.* at *5, *3. According to Judge Coogler, however, "[t]he problem with Plaintiffs' argument [was] that Petty's testimony ha[d] very little probative value [because, as the court explained elsewhere in its decision, it could not] consider Petty's testimony to the extent he offer[e]d an expert opinion." *Id.* at *6.

> If Plaintiffs had timely disclosed Petty as an expert, his opinion would perhaps have created a genuine issue of material fact regarding whether the allegedly storm-damaged roof actually caused water damage in the home. But since Petty was not disclosed as an expert,

the Court can only consider those portions of his testimony that are admissible by a lay witness. In other words, Petty's testimony is only admissible to the extent it involves his first-hand knowledge of the damage to the roof and water damage to the home. *See* FED. R. EVID. 701. However, Plaintiffs have not made the necessary showing that Petty has first-hand knowledge of the roof damage or water damage, as would be required for lay testimony. Petty did not witness the storm damaging the roof, nor does he allege observing the water actually entering the home. Rather, his testimony is based on his after-the-fact inspection and his "30 years of experience in the roofing . . . business." Presented in this format, Petty's testimony cannot be fairly classified as lay testimony, and to the extent it is offered as such, is undoubtedly inadmissible at the summary judgment stage just as it would be at trial.

Additionally, Plaintiffs wrongly assert that expert testimony is not required to prove their case. While it may be true that an expert is not required in all breach of contract cases, here the crucial question— whether the water damage came from ground water accumulation or a roof defect—is not one a lay witness can answer. A lay witness is not capable of testifying about whether roof damage arose due to a product defect, poor workmanship, natural wear and tear, storm damage, or some other cause. Nor is a lay witness capable of opining that a storm-damaged roof resulted in specific water damage in the ceiling, or that a storm-damaged air conditioning unit resulted in standing water under the house. *See* FED. R. EVID. 701(c) (stating that lay witness opinion must "not [be] based on scientific, technical, or specialized knowledge within the scope of Rule 702"). Rather, expert testimony would be required on these disputed points.

*Id.* (record citation omitted); *see also id.* ("Importantly, this conclusion is supported by precedent from this Court and the Eleventh Circuit." (citing and discussing *Nix*)); *id.* at *7 ("As in *Nix*, Petty's testimony is not based on first hand knowledge, and therefore is not admissible as a lay witness's opinion. ***Consequently, Plaintiffs have no evidence at all to counter Nationwide's position that the water damage arose from surface and ground water accumulation.*** Without evidence that their loss is covered by the Policy, Plaintiffs cannot show Nationwide

breached the terms of the Policy by refusing to pay their claim. As in *Nix*, Plaintiffs are unable to rebut Nationwide's 'uncontroverted evidence.' Therefore, Nationwide's Motion for Summary Judgment is due to be GRANTED with regard to Plaintiffs' breach of contract claim." (emphasis added and footnote omitted)).

One year before *Ware*, the court in *McPherson v. Allstate Indemnity Co.*, Civil Action No. 3:11cv638–WHA, 2012 WL 1448049 (M.D. Ala. Apr. 26, 2012), also relying on *Nix*, reached the same conclusion. *See id.* at *7-8.

> In [that] case, the McPhersons's apparent theory that lightning, either by itself or in combination with gasoline left at the scene by Willie McPherson, caused the fire at issue is supported only by evidence discussed above[.[16]] When construed in a light most favorable to the nonmovants, that evidence is not sufficient to create a question of fact as to the cause of the fire, in the face of [the expert's] report and deposition testimony. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Summary judgment is due to be GRANTED as to Allstate on the breach of contract claim.

*Id.* at *8 (quoting *Matsushita*, 475 U.S. at 586).

The Johnsons, like the plaintiffs in *Nix*, *Ware*, and *McPherson*, attempt to refute the insurer's causation evidence—including a report by, and testimony, from a witness accepted by both sides to be an expert—with lay witness accounts that

---

[16]     "The McPhersons [ ] offered no expert testimony, or eye witness testimony from the time of the loss, to contradict [Allstate's expert's] conclusions." *Id.* at *7. They only provided an affidavit from the plaintiff's nephew, "offered years after the fire[,]" in which he testified "about the general presence of gasoline on floors at the structure"—which the court concluded "establishes that he put gasoline on the floors, but does not rule out that others may have also placed gasoline on the floor in the room of origin of the house"— and "seeing lightning at the property after he had been notified that there was a fire at the property[,]" which the court concluded "could not establish that the house was struck by lightning"; and challenged a conclusion by Allstate's expert, which the court rejected. *Id.* at *7-8.

they hope show the damage/loss is covered under the Policy. However, even when this evidence is construed in a light most favorable to the Johnsons, all it shows is that there was a pinhole leak in a pipe under the Johnsons' house. True, unlike the lay testimony presented in at least some of the cases discussed above, *contra Nix*, the lay testimony here is not based on observations looking far back in time. Still, the lay testimony is by witnesses who either personally spotted or repaired the leak after the fact. As such, this testimony does not present the Court with evidence to show that the leaking pipe ***caused*** the damage to the Johnsons' house. Thus, in the face of State Farm's evidence—particularly, evidence from an independent expert— the evidence the Johnsons point to is not enough to avoid summary judgment as to causation. *Compare Ware*, 2013 WL 1680514, at *6 (the "the crucial question" before the Court is what caused the damage to the insured property; that question "is not one a lay witness can answer" (citing FED. R. EVID. 701(c) (stating that lay witness opinion must "not [be] based on scientific, technical, or specialized knowledge within the scope of Rule 702")), *with McPherson*, 2012 WL 1448049, at *8 ("When construed in a light most favorable to the nonmovants, that evidence is not sufficient to create a question of fact as to the cause of the fire, in the face of [the expert's] report and deposition testimony. To avoid summary judgment, the nonmoving party must do more than show that there is some metaphysical doubt as to the material facts." (citation and internal quotation marks omitted)).

> **3.  The Johnsons have failed to come forward with any evidence to show that any damage caused by a broken water pipe, which they contend is covered by the Policy, is somehow divisible from damage that is clearly**

**excluded under the Policy.**

Next, key to the Johnsons' effort to avoid summary judgment being entered against them, is their apparent position that they have submitted "evidence that the damage, ***at least in part***, was from moisture resulting from the broken pipe" and "due to a leak in the roof[,]" which they contend would both be covered by the Policy. (Doc. 55 at 1 (emphasis added); *see also id.* at 2 ("While there *may* be some overlap between damage due to the broken pipe[] and damage[] allegedly due to long term water accumulation from other sources, . . . there is a substantial question of fact and triable issue ***as to the extent of damages*** resulting from the leakage from a hole in the pipe which was accidental, and discovered and repaired quickly by the insured, which is a covered claim." (second emphasis added).)

Because the Johnsons are not able to rebut State Farm's uncontroverted evidence as to causation—and because they have offered no evidence to show that the damage to the house would not have occurred in the absence of long term water accumulation (excluded under the Policy)—the Court must also reject their attempts to show that the breach of contract claim can be presented to a jury to determine what extent of the damages were caused by means not excluded under the Policy. This is so, at least in part, because the Policy contains an unambiguous "anticoncurrent-causation" (or "ACC") clause:

> We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently ***or in any sequence with*** the excluded event to produce the loss; or (d) whether the event occurs suddenly or

gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of . . . Water Damage.

(Doc. 46-1 at 23 (emphasis added).)

"A general background principle of [many state's] contract law holds that parties may decline to adopt common-law causation rules so long as the contract's provisions do not offend public policy." *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 435 (5th Cir. 2007) (citations omitted). Although, in *Leonard*, the Fifth Circuit was interpreting Mississippi law, the court of appeals pointed to an Alabama Supreme Court decision as "representative of [the] trend" that "[m]ost jurisdictions concur that ACC clauses comport with state public policy." *Id.* As characterized by the Fifth Circuit, *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293 (Ala. 1999),

> involved an improbable set of events in which a lightning bolt caused the collapse of a retaining wall near the policyholders' swimming pool. Months later, cracks were observed in the interior and exterior walls of the adjacent dwelling. State Farm refused to cover the structural damage, asserting that lightning (a covered peril), caused subsequent earth movement (an excluded peril), resulting in the observed damage. The homeowner's policy contained an ACC clause substantively indistinguishable from the one contested here. *Slade* held that the occasional citation of the efficient proximate cause rule in Alabama caselaw did not require the court to invalidate the disputed ACC clause because the rule is not a "principle of public policy." 747 So. 2d at 314. Instead, the court adhered to Alabama's "long-standing rule against rewriting unambiguous insurance policies so long as they do not . . . contravene public policy." *Id.* (citation and internal quotation marks omitted).

*Id.*; *contra Burgess v. Allstate Ins. Co.*, 334 F. Supp. 2d 1351, 1363-64 (N.D. Ga. 2003) (where a policy excluded "loss consisting of or caused by . . . rust or other

corrosion, mold, wet or dry rot," the court applied the common law efficient proximate cause doctrine—"if the mold exclusion combines with a covered risk that is the proximate cause of the loss, then the Plaintiff's losses may be covered"—and determined that, because it had "already concluded that Plaintiff has made a prima facie showing that she has a claim covered under the policy[ and] presented evidence that she has suffered losses due to mold infestation[,]" and the insurer had made a statement indicating the possibility of coverage for mold in certain circumstances, the issue of "whether Plaintiff's loss is caused by the mold infestation or the water damage is a question of fact to be submitted to a jury[,]" and summary judgment would be denied).

In *Tuepker v. State Farm Fire & Casualty Co.*, 507 F.3d 346 (5th Cir. 2007), decided shortly after *Leonard*, the Fifth Circuit examined the same ACC clause and water damage exclusion that appear in the Johnsons' policy, *see id.* at 353-54 ("The State Farm ACC Clause does differ from the Nationwide ACC Clause in that it states that the policy does not cover 'any loss which would not have occurred in the absence of one or more of the following excluded events.'  However, this difference does not introduce any ambiguity or significantly differentiate the clause from the ACC Clause at issue in Leonard.  Both clearly state that excluded losses . . . will not be covered even if a nonexcluded event or peril acts 'concurrently or in any sequence' with the excluded event to cause the loss in question.").  There, the Fifth Circuit concluded that "the ACC Clause in combination with the Water Damage Exclusion clearly provides that ***indivisible*** damage caused by both excluded perils

and covered perils or other causes is not covered." *Id.* at 354 (emphasis added). The Johnsons offer no evidence—they merely speculate—that the mere presence of a leak means that some damage may be attributable to that leak and not caused by long term water accumulation, which is the cause of the damage according to the State Farm claims representative; a separate insurance adjuster; and, most importantly, an independent expert witness. *See Swenson v. State Farm Fire & Cas. Co.*, 891 F. Supp. 2d 1101, 1110-11 (D.S.D. 2012) ("The lead-in clause to the fungus exclusion in the Policy at issue precludes application of the efficient proximate cause doctrine to the fungus exclusion itself. Because the efficient proximate cause doctrine does not apply to the fungus exclusion and because the fungus exclusion is not ambiguous, Plaintiffs may not recover for any loss that would not have occurred in the absence of fungus, regardless of whether a covered peril was the efficient proximate cause of the loss.") (granting summary judgment for State Farm); *cf. Tuepker*, 507 F.3d at 354 (explaining, "the ACC Clause by its terms applies only to 'any loss which would not have occurred in the absence of one or more of the below listed excluded events,' and thus, for example, if wind blows off the roof of the house, the loss of the roof is not excluded merely because a *subsequent* storm surge later completely destroys the entire remainder of the structure; such roof loss *did* occur in the absence of any listed excluded peril" (emphasis in original)).[17]

---

[17] Based on the uncontroverted summary judgment evidence before the Court, causation in this case is not as clean cut as that example. The cause the Johnsons argue for is not at all removed temporally from the cause—long term surface water accumulation—

### 4. The Johnsons' contentions regarding roof damage and mold and mildew.

The Johnsons' opposition to summary judgment references a roof leak. (*See, e.g.,* Doc. 55 at 8-9 (referencing Bartlett's deposition testimony, discussing his October 25, 2011 letter to Warhurst, in which it was explained that State Farm's "inspection revealed additional water leakage from a roof leak . . . paid for under a separate claim").) The amended complaint filed in state court makes no reference to a roof leak. (*Compare, e.g.,* Doc. 1-2, ¶ 4 ("water from a pipe leak underneath the Plaintiffs' home resulted in property damage"), *with id.,* ¶ 6 (Bartlett "blamed the cause of damage to plaintiffs' home on rain water"), *with id.,* ¶ 7 ("Plaintiffs hired a plumber to repair the source of the leak and received an invoiced that described the work performed as ' . . . repair leak on water line under house . . . .'"), *with id.,* ¶ 9 (State Farm stated that "claim was not a covered loss because the damage resulted from continuous seepage and leakage of water and moisture from a water source outside the house plumbing system.").) This case has not proceeded on that theory. And, most importantly, State Farm offers no admissible proof (expert or competent lay testimony) to show that the damage at issue in this case was caused by a roof leak. (*Compare* Doc. 47 at 25, Bartlett Mar. 2, 2011 letter to the Johnsons, ("As we discussed, I observed water damage to your ceiling tiles in several rooms which would qualify for a second claim with a separate deductible. If you wish to file another claim for this damage you will need to contact your agent to have her set up

---

established by State Farm's uncontroverted evidence. Mr. Johnson testified that the leak was discovered after the mold, but he also testified that it was uncertain how long the leak existed prior to its discovery

this claim."), *with* Doc. 48 at 24, Warhurst Sept. 23, 2011 letter to Bartlett ("The cause of loss is a burst water pipe.").)  Next, as State Farm points out on reply (Doc. 62 at 10-11), the Johnsons' opposition fails to address State Farm's arguments regarding the Policy's exclusion for mold and mildew related damages.

## V.    Bad Faith Claims.

Although the Johnsons' operative complaint combines their bad faith claims into one count (*see* Doc. 1-2 at 3; ¶ 20 ("Defendant State Farm, in bad faith, failed to investigate and failed to pay Plaintiffs' claim.")), bad faith failure to pay (also known as "normal" bad faith) and bad faith failure to investigate (also known as "abnormal" bad faith" are "distinct" causes of action, which "should not be confused," and, as such, a court must "address[] them separately."  *Ware*, 2013 WL 1680514, at *7 (citing *Jones v. Alfa Mut. Ins. Co.*, 1 So. 3d 23 (Ala. 2008)).

### A.    Failure to Pay.

In order to establish a claim of bad faith refusal to pay under Alabama law, a plaintiff must prove: "(1) the existence of an insurance contract; (2) an intentional refusal to pay the claim; and (3) the absence of any lawful basis for refusal and the insurer's knowledge of that fact or the insurer's intentional failure to determine whether there is any lawful basis for its refusal."  *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 16 (Ala. 2001).  "If [the plaintiff's] evidence fails to eliminate any arguable reason for denying payment, any fairly debatable reason on a matter of fact or a matter of law, he cannot recover under the tort of 'bad faith refusal [to pay].'"  *National Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 185 (Ala. 1982).  In fact, a plaintiff's burden is so heavy that "[f]or a 'normal' bad-faith claim to be submitted to the jury, the underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law."  *Shelter Mut. Ins. Co. v. Barton*, 822 So. 2d 1149, 1155 (Ala. 2001).  Thus, "if the evidence produced by either side creates a fact issue with regard to the validity of the claim and thus, the legitimacy of the denial thereof, the tort claim must fail."  *National Savings Life Ins. Co. v. Dutton*, 419 So. 2d

1357, 1362 (Ala. 1982).

*Ware*, 2013 WL 1680514, at *7. Because the Johnsons' breach of contract claim fails, the Court is unable to find that the third element necessary to establish a bad faith failure to pay/normal bad faith claim can be established as a matter of law. As such, State Farm's motion for summary judgment should be granted as to this claim.

### B.    Failure to Investigate.

> In order to recover under an "abnormal" bad faith failure to investigate theory, the a plaintiff must show "(1) that the insurer failed to properly investigate the claim or subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance cover-age with the insured when it refused to pay the insured's claim." *Slade*, 747 So. 2d at 318. "Practically, the effect is that in order to prove a bad-faith-failure-to-investigate claim, the insured must prove that a proper investigation would have revealed that the insured's loss was covered under the terms of the contract." *Id.*

> Unlike a "normal" bad faith claim, "[t]he rule in 'abnormal' cases dispensed with the predicate of a preverdict JML [judgment as a matter of law] for the plaintiff on the contract claim." *White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 348 (Ala. 2006). That said, an abnormal bad faith claim is still ultimately dependent on the breach of contract claim, since a plaintiff may not recover under an abnormal bad faith claim unless the defendant is found liable under the breach of contract theory as well. *See Slade*, 747 So. 2d at 318 (stating that, while abnormal bad faith cases are excepted from the JML standard of proof, the plaintiff must still ultimately "prove an entitlement to benefits under the policy").

*Ware*, 2013 WL 1680514, at *7. Just as the court in Ware found, "because the Court has already determined that summary judgment is due to be entered against [the Johnsons] on their breach of contract claim, their abnormal bad faith claim must fail as well."

## VI.    Conclusion.

For the reasons discussed above, the Johnsons' motion to strike (Doc. 58) is **DENIED**, and State Farm's motion for summary judgment (Doc. 43) is **GRANTED** in its entirety.   The Johnsons' claims are **DISMISSED** with **PREJUDICE**, and the Clerk is **DIRECTED** to **CLOSE** this case.[18]   A corresponding judgment will be entered separately.

**DONE** and **ORDERED** this the 29th day of August, 2013.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[18]    Further, State Farm's motion to strike (Doc. 64) is **DENIED as MOOT**.